IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| HARTFORD UNDERWRITERS INSURANCE COMPANY, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. ) |
| AMERICAN TAX LIEN, LLC, WHEELER FINANCIAL INC., REBECCA RUTKA-KURPIEL, and CHRISTOFHER MOORE, | ) ) ) ) ) |
| Defendants. | ) ) ) |

**COMPLAINT FOR DECLARATORY JUDGMENT**

Plaintiff Hartford Underwriters Insurance Company ("The Hartford"), for its Complaint for Declaratory Judgment, states as follows:

**NATURE OF THE ACTION**

1. This is a dispute regarding insurance coverage for two class-action lawsuits filed in Illinois state court against affiliated companies, Wheeler Financial Inc. ("Wheeler") and American Tax Lien, LLC ("ATL").

2. The lawsuits were brought on behalf of all individuals who owned property in Illinois, which was taken by Wheeler or ATL through the tax-deed process without compensating the underlying plaintiffs for the value of the property in excess of outstanding taxes, fees and interest.

3. ATL and Wheeler seek coverage for the lawsuits from The Hartford under two Business Owner's Policies issued to ATL and Wheeler for annual periods from January 29, 2024, to January 29, 2025, and January 29, 2025, to January 29, 2026. ("the Policies").

4. The Hartford disputes that the Policies provide coverage for the lawsuits, among other reasons, because: (a) the lawsuits do not seek damages on account of "bodily injury," "property damage," or "personal & advertising injury" as those terms are defined by the Policies; (b) any alleged injury or damage was not caused by an "occurrence" as defined by the Policies; and (c) various exclusions preclude coverage.

5. The Hartford filed this action to obtain a declaration that it has no duty to defend or indemnify ATL and Wheeler in the lawsuits.

## PARTIES

6. The Hartford is an insurance company incorporated under the laws of Connecticut with its principal place of business in Connecticut.

7. Wheeler is a corporation incorporated under the laws of Illinois with its principal place of business in Illinois.

8. ATL is a limited liability company organized under the laws of Illinois with two members: David R. Gray Jr. and Timothy E. Gray.

9. David R. Gray Jr. and Timothy E. Gray are natural persons, both of whom are domiciled in Illinois.

10. Rebecca Rutka-Kurpiel is a natural person and domiciled in Illinois.

11. Christofher Moore is a natural person and domiciled in Illinois.

**JURISDICTION AND VENUE**

12. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1332(a), 2201, and 2202, as complete diversity exists between the parties, the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and The Hartford seeks declaratory relief with respect to a case of actual controversy within this Court's jurisdiction.

13. Complete diversity exists because The Hartford is a citizen of Connecticut and each of the Defendants is a citizen of Illinois.

14. Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b)(1) and (2), in that one or more Defendants are residents within this judicial district and a substantial part of the events or omissions giving rise to this action occurred within this district.

**THE LAWSUITS**

15. On February 8, 2025, Defendant Rebecca Rutka-Kurpiel, individually and on behalf of all others similarly situated, filed a class action lawsuit against Wheeler in the Circuit Court of Cook County Chancery Division, Case No. 2025CH02409 (the "*Rutka-Kurpiel* Lawsuit"). A true and accurate copy of the complaint in the *Rutka-Kurpiel* Lawsuit is attached hereto as **Exhibit A**.

16. On July 1, 2025, Defendant Christofher Moore, individually and on behalf of all others similarly situated, filed a class action lawsuit against ATL in the Circuit Court of Cook County Chancery Division, Case No. 2025CH06905 (the "*Moore* Lawsuit," and together with the *Rutka-Kurpiel* Lawsuit, the "Lawsuits"). A true and accurate copy of the complaint in the *Moore* Lawsuit is attached hereto as **Exhibit B.**

17. The complaints allege that:

3

    a. the named plaintiffs and class members owned real property in the State of Illinois;

    b. the named plaintiffs and class members failed to pay property taxes on those properties;

    c. Wheeler or ATL purchased the tax lien on the named plaintiffs' and class members' properties;

    d. Wheeler or ATL executed tax liens on the properties and obtained title to the properties; and

    e. Wheeler or ATL sold the properties and retained the full value of the sale proceeds, including that portion that exceeded the named plaintiffs' and class members' delinquent property taxes, interest, and fees owed.

18. Both complaints allege five causes of action: (1) taking of private property without just compensation in violation of the Fifth and Fourteenth Amendments to the United States Constitution and section 1983 or Title 42 of the United States Code; (2) taking of private property without just compensation in violation of Article I, section 15 of the Illinois Constitution; (3) excessive fines in violation the Eighth and Fourteenth Amendments to the United States Constitution and section 1983 or Title 42 of the United States Code; (4) unjust enrichment; and (5) the tort of money had and received.

19. As damages, the underlying plaintiffs seek: (1) the portion of the proceeds from the sale of their properties that exceed their delinquent property taxes, interest, and fees owed; (2) a declaration that Wheeler or ATL's conduct is unlawful; and (3) an injunction, prohibiting Wheeler or ATL from continuing the alleged conduct.

## **THE HARTFORD POLICIES**

20. The Hartford issued Business Owner's Policies to ATL and Wheeler for annual periods from January 29, 2024, to January 29, 2025, and January 29, 2025, to January 29, 2026. True and accurate copies of the Policies are attached hereto as **Exhibit C** and **Exhibit D**, respectively.

21. The Policies contain multiple coverages, including Business Liability Coverage and an Umbrella Liability Supplemental Policy.

### *Business Liability Coverage*

22. The Policies' Business Liability Coverage has limits of $1 million per occurrence and $2 million in the aggregate.

23. Its Insuring Agreement provides in relevant part:

> **a**. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we have no duty to defend the insured against any "suit" seeking damages for "bodily injury", "property damage" or "personal and advertising injury" to which this insurance does not apply.
>
> \* \* \*
>
> **b**. This insurance applies:
> **(1)** To "bodily injury" and "property damage" only if:
> **(a)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";
> **(b)** The "bodily injury" or "property damage" occurs during the policy period;
>
> \* \* \*
>
> **(2)** To "personal and advertising injury" caused by an offense arising out of your business, but only if the offense was committed in the "coverage territory" during the policy period.

5

24. The Business Liability Coverage contains the following exclusions:

This insurance does not apply to:

a. **Expected Or Intended Injury**
   (1) "Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" or "property damage" resulting from the use of reasonable force to protect persons or property; or
   (2) "Personal and advertising injury" arising out of an offense committed by, at the direction of or with the consent or acquiescence of the insured with the expectation of inflicting "personal and advertising injury".

\* \* \*

j. **Professional Services**
"Bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering of or failure to render any professional service....

\* \* \*

25. The Business Liability Coverage contains the following definitions:

   5. "Bodily injury" means physical:
      a. Injury;
      b. Sickness; or
      c. Disease
      sustained by a person and, if arising out of the above, mental anguish or death at any time.

\* \* \*

   16. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

   17. "Personal and advertising injury" means injury, including consequential "bodily injury" arising out of one or more of the following offenses:
      a. False arrest, detention or imprisonment;
      b. Malicious prosecution;
      c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person or organization occupies, committed by or on behalf of its owner, landlord

6

       d. or lessor;
       d. Oral, written, electronic, or any other manner of publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;
       e. Oral, written, electronic, or any other manner of publication of material that violates a person's right of privacy;
       f. Copying, in your "advertisement", a person's or organization's "advertising idea" or style of "advertisement"; or
       g. Infringement of copyright, slogan, or title of any literary or artistic work, in your "advertisement".

* * *

20. "Property damage" means:
       a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
       b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

As used in this definition, "electronic data" is not tangible property.

***The Policies' Umbrella Liability Supplemental Policy***

26.    The Policies' Umbrella Liability Supplemental Policy is subject to a self-insured retention of $10,000 and has limits of $5 million per occurrence and $5 million in the aggregate.

27.    Its Insuring Agreement provides in relevant part:

       a. We will pay those sums that the "insured" becomes legally obligated to pay as "damages" in excess of the "underlying insurance" or of the "self-insured retention" when no "underlying insurance" applies, because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies caused by an "occurrence".

* * *

.
       b. This insurance applies to "bodily injury", "property damage" or "personal and advertising injury" only if:
           (1) The "bodily injury", "property damage" or "personal and advertising injury" occurs during the "policy period"[…]

28. The Umbrella Liability Supplemental Policy states "except as otherwise provided in this section or amended by endorsement, the words or phrases that appear in quotation marks within this policy shall follow the definitions of the applicable 'underlying insurance' policy."

29. The Umbrella Liability Supplemental Policy also contains the following relevant definitions:

> 4. "Damages" means a monetary award, monetary settlement or monetary judgment. "Damages" includes prejudgment interest awarded against the "insured" on that part of the judgment we pay.
>    a. The following are not considered "damages" and are not covered by this Supplemental Policy;
>       (1) Fines, penalties, sanctions or taxes;
>       (2) Attorney's fees and costs associated with any non-monetary relief awarded against the "insured"; or
>       (3) Any monetary award, monetary settlement or monetary judgment for which insurance is prohibited by the law(s) applicable to the construction of this Supplemental Policy.
>
> \* \* \*
>
> 11. "Occurrence" means
>     a. With respect to "bodily injury" or "property damage", an accident, including continuous or repeated exposure to substantially the same general harmful conditions; and
>     b. With respect to "personal and advertising injury", an offense described in the definition of "personal and advertising injury" in the "underlying insurance".
>
> \* \* \*
>
> 16. "Underlying Insurance" means the insurance policies, coverage parts, and endorsements listed in the Extension Schedule Of Underlying Insurance, including any renewals or replacements thereof, which provide the underlying coverages and limits stated in the Schedule Of Underlying Insurance …

30. The Umbrella Liability Supplemental Policy also contains the following additional relevant exclusionary language:

> This Supplemental Policy does not apply to:

* * *

d. **Personal and Advertising Injury**
"Personal and advertising injury".
**(1) EXCEPTION**
This exclusion does not apply to the extent that coverage for such "personal and advertising injury" is provided by "underlying insurance", but in no event shall any "personal and advertising injury" coverage provided under this Supplemental Policy apply to any claim or "suit" to which "underlying insurance" does not apply. This **EXCEPTION** applies only to the extent that such coverage provided by the "underlying insurance" is maintained having limits as set forth in the Schedule Of Underlying Insurance.

When this **EXCEPTION** applies, the insurance provided under this Supplemental Policy for "personal and advertising injury" will follow the same provisions, exclusions and limitations that are contained in the applicable "underlying insurance", unless otherwise directed by this insurance.

* * *

o. **Expected or Intended**
"Bodily injury" or "property damage" expected or intended from the standpoint of the "insured." This exclusion does not apply to "bodily injury" or "property damage" resulting from the use of reasonable force to protect persons or property.

## INSURANCE COVERAGE DISPUTE

31. On March 21, 2025, Wheeler notified The Hartford of the *Rutka-Kurpiel* Lawsuit.

32. On April 14, 2025, Wheeler sent The Hartford a copy of the summons and complaint in the *Rutka-Kurpiel* Lawsuit.

33. On May 20, 2025, The Hartford disclaimed coverage for the *Rutka-Kurpiel* Lawsuit. The disclaimer requested that Wheeler permanently withdraw its tender for *Rutka-Kurpiel* Lawsuit. It further requested a response by June 20, 2025. A true and correct copy of the disclaimer is attached hereto as **Exhibit E**.

34. The Hartford did not receive a response to its request on or before June 20, 2025.

9

35. Therefore, on July 7, 2025, and again on August 27, 2025, and again on September 23, 2025, The Hartford emailed Wheeler and inquired whether Wheeler planned to withdraw its tender.

36. On September 29, 2025, Wheeler advised that it was still evaluating coverage and tendered the *Moore* Lawsuit to The Hartford. A true and correct copy of the correspondence described in paragraphs 35 and 36 is attached hereto as **Exhibit F.**

37. An actual, present, and bona fide controversy exists between The Hartford, on the one hand, and Wheeler and ATL, on the other hand, with respect to whether the Policies obligate The Hartford to defend or indemnify Wheeler and ATL in connection with the Lawsuits.

## COUNT I – DECLARATORY JUDGMENT
### (Duty to Defend)

38. The Hartford incorporates by reference each and every allegation set forth in the preceding paragraphs 1 through 37 as though set forth fully herein.

39. Subject to all other terms and conditions, the Policies cover only those damages because of "bodily injury" or "property damage" caused by an "occurrence," or "personal and advertising injury" caused by an enumerated offense.

40. The Lawsuits do not seek damages because of "bodily injury" or "property damage" caused by an "occurrence," or "personal and advertising injury" caused by an enumerated offense.

41. The Policies exclude coverage for "bodily injury" or "property damage" expected or intended from the standpoint of the insured and for "personal and advertising injury" committed by, at the direction of, or with the consent or acquiescence of the insured with the expectation of inflicting "personal and advertising injury."

42. To the extent the Lawsuits seek damages because of "bodily injury" or "property damage", the "bodily injury" or "property damage" was expected or intended from the standpoint of ATL and Wheeler.

43. To the extent the Lawsuits seek damages for "personal and advertising injury", it was committed by ATL and Wheeler with the expectation of inflicting "personal and advertising injury."

44. The Policies exclude coverage for "bodily injury", "property damage", or "personal and advertising injury" arising out of the rendering of or failure to render any professional service.

45. To the extent the Lawsuits seek damages for "bodily injury", "property damage", or "personal and advertising injury", the "bodily injury", "property damage", or "personal and advertising injury" arises out of ATL and Wheeler's rendering or failing to render a professional service.

46. Therefore, The Hartford is entitled to a declaration that it has no obligation under the Policies to defend Wheeler or ATL in connection with the Lawsuits.

## COUNT II – DECLARATORY JUDGMENT
### (Duty to Indemnify)

47. The Hartford incorporates by reference each and every allegation set forth in the preceding paragraphs 1 through 37 as though set forth fully herein.

48. Subject to all other terms and conditions, the Policies cover only those damages because of "bodily injury" or "property damage" caused by an "occurrence," or "personal and advertising injury" caused by an enumerated offense.

49. The Lawsuits do not seek damages because of "bodily injury" or "property damage" caused by an "occurrence," or "personal and advertising injury" caused by an enumerated offense.

50. The Policies exclude coverage for "bodily injury" or "property damage" expected or intended from the standpoint of the insured and coverage for "personal and advertising injury" committed by, at the direction of, or with the consent or acquiescence of the insured with the expectation of inflicting "personal and advertising injury."

51. To the extent the Lawsuits seeks damages because of "bodily injury" or "property damage", the "bodily injury" or "property damage" was expected or intended from the standpoint of ATL and Wheeler.

52. To the extent the Lawsuits seek damages for "personal and advertising injury:, it was committed by ATL and Wheeler with the expectation of inflicting "personal and advertising injury."

53. The Policies exclude coverage for "bodily injury", "property damage", or "personal and advertising injury" arising out of the rendering of or failure to render any professional service.

54. To the extent the Lawsuits seek damages for "bodily injury", "property damage", or "personal and advertising injury", the "bodily injury", "property damage", or "personal and advertising injury" arises out of ATL and Wheeler's rendering or failing to render a professional service.

55. Therefore, The Hartford is entitled to a declaration that it has no obligation under the Policies to indemnify Wheeler or ATL in connection with the Lawsuits.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, The Hartford, prays that this Court enter a judgment in its favor and against the Defendants, awarding the following relief:

a. a declaration that The Hartford has no obligation under the Policies to defend ATL or Wheeler in connection with the Lawsuits;

b. a declaration that The Hartford has no obligation under the Policies to indemnify ATL or Wheeler in connection with the Lawsuits;

c. costs of suit incurred herein; and

d. such other and further relief at law or in equity that the Court deems just and proper.

Dated: December 5, 2025     Respectfully submitted,

By:   /s/ Colleen P. Sorensen

Colleen P. Sorensen
John McAllister (*admission request forthcoming*)
BatesCarey LLP
191 North Wacker Drive, Suite 2400
Chicago, Illinois 60606
(312) 762-3100
csorensen@batescarey.com
jmcallister@batescarey.com

*Attorneys for Hartford Underwriters Insurance Company*