IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| HARTFORD UNDERWRITERS INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff/Counter-Defendant, | ) | |
| | ) | |
| v. | ) | Case 25 C 14808 |
| | ) | |
| | ) | |
| AMERICAN TAX LIEN, LLC and WHEELER FINANCIAL, INC., et al., | ) | |
| | ) | |
| Defendants/Counter-Plaintiffs. | ) | |

Memorandum Opinion and Order

The complaint in this action seeks a declaratory judgment that Hartford Insurance Company owes no duty to defend or indemnify its insureds, American Tax Lien, LLC, and Wheeler Financial, Inc., (the "Tax Buyers," as they are called in the underlying complaints), against class action law suits challenging the constitutionality and common law legality of a tax sale process through which the Tax Buyers obtained ownership of the underlying plaintiffs' residential properties after they failed to pay their property taxes. The Tax Buyers later filed a mirror-image counterclaim for declaratory judgment concerning Hartford's duties to defend and indemnify, along with claims for breach of contract and bad faith under 215 ILCS 5/155. Currently pending are cross-motions for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c), which I resolve as follows.

I.

According to the underlying complaints, the unlawful tax sale process goes like this: First, the county in which the property sits places a tax lien on the property after the owner fails to pay property taxes. Then, the Tax Buyer purchases the tax lien from the county by paying the amount the property owner owes in delinquent taxes, plus penalties and interest. If the property owner does not timely redeem his or her property by paying the Tax Buyer for all outstanding amounts, including back taxes and continuing interest, the Tax Buyer forecloses on, obtains a deed to, and evicts the previous owner from the property. In this way, the Tax Buyer "acquires the entire fair market value of the property," which may be hundreds of thousands of dollars, "in exchange for the amount for which the Tax Buyer purchased the tax lien" – sometimes as little as a few thousand dollars. Compl., ECF 4-1 at ¶ 90. The underlying plaintiffs are "divested property owner[s]" who claim that the Tax Buyers violated their constitutional and common law rights by "failing and refusing to compensate" them for the "surplus value" of their properties, i.e., the spread between fair market value of the property and the delinquent taxes, fees, and interest. *Id.* at ¶ 92.

During the relevant period, Hartford issued the Tax Buyers two Business Owner's Policies ("the Policies"). Defendant Wheeler notified Hartford of the first underlying action ("*Rutka-Kurpiel*")

on March 21, 2025, and advised Hartford on April 14, 2025, that it had been served in the suit. Compl., ECF 4 at ¶¶ 31-32. On May 20, 2025, Hartford emailed a letter to Wheeler disclaiming any defense or indemnity obligations under either the "Business Liability Coverage" or the "Umbrella Liability" coverage of Wheeler's Policies. *Id.* at ¶ 33; ECF 4-5 at 4. The letter explained the basis for Hartford's determination of no coverage; requested that Wheeler "permanently withdraw its tender" by June 20, 2025; and advised that if Wheeler declined to withdraw its tender, "Hartford may file a declaratory judgment action to protect its interests." *Id.* at 3.

Wheeler did not withdraw its tender or otherwise respond to Hartford by June 20, 2025, so Hartford sent follow-up emails on July 7, 2025, August 27, 2025, and September 23, 2025, reiterating its request that Wheeler withdraw its tender or inform Hartford that it disputed Hartford's coverage determination. Compl., ECF 4 at ¶ 35. On behalf of Wheeler, David R. Grey responded to these communications, first on August 28, 2025, when he stated, "[t]hank you for following up. I will do my best to respond to you by September 5th," and again on September 29, 2025, when he wrote: "Thank you for extending the time for us to continue to look into this coverage issue. While I am still considering this policy and claim, I would like to make another claim, which is virtually the same[.]" ECF 4-6 at 2. The September 29th response attached the

complaint in the second underlying action ("*Moore*") against American Tax Lien.[1] *Id.* Hartford filed this action on December 8, 2025, and the Tax Buyers filed their counterclaims on March 13, 2026.

I.

A party may move for judgment on the pleadings under Rule 12(c) after the complaint and answer have been filed. Fed. R. Civ. P. 12(c). Such motions should be granted only if the pleadings show beyond doubt that the movant is entitled to relief. *Scottsdale Ins. Co. v. Columbia Ins. Grp., Inc.*, 972 F.3d 915, 919 (7th Cir. 2020). Although this standard is like the one that applies to motions under Rule 12(b)(6), *Federated Mut. Ins. Co. v. Coyle Mech. Supply Inc.*, 983 F.3d 307, 313 (7th Cir. 2020), "[w]hen the movant seeks to 'dispose of the case on the basis of the underlying substantive merits ... the appropriate standard is that applicable to summary judgment, except that the court may consider only the contents of the pleadings.'" *U.S. Specialty Ins. Co. v. Vill. of Melrose Park*, 455 F. Supp. 3d 681, 687 (N.D. Ill. 2020) (quoting *Alexander v. City of Chicago*, 994 F.2d 333, 336 (7th Cir. 1993) (ellipses in *Melrose Park*).

[1] The pleadings are silent as to the relationship between the two defendants, but Mr. Gray evidently handled the claims tendered by both defendants.

Because the parties invoke the diversity jurisdiction and agree that Illinois law governs the Policies, I apply the substantive law of Illinois. *See Koransky, Bouwer & Poracky, P.C. v. Bar Plan Mut. Ins. Co.*, 712 F.3d 336, 341 (7th Cir. 2013). "In Illinois, as in most states, insurance policies are construed according to the same principles that govern other types of contracts." *Astellas US Holding, Inc. v. Fed. Ins. Co.*, 66 F. 4th 1055, 1061 (7th Cir. 2023) (citation omitted). If the policy terms are clear and unambiguous, they must be given their plain and ordinary meaning unless doing so would violate public policy. *Berg v. New York Life Ins. Co.*, 831 F.3d 426, 429 (7th Cir. 2016). Any ambiguities in the policy, however, must be construed liberally in favor of coverage, while provisions limiting coverage must be construed narrowly. *DeSaga v. W. Bend Mut. Ins. Co.*, 910 N.E.2d 159, 164 (Ill. App. Ct. 2009).

An insurer has a duty to defend "if the allegations in the underlying complaint fall within, or potentially within, the policy's coverage ... even if the allegations are groundless, false, or fraudulent, and even if only one of the several theories of recovery alleged in the complaint falls within the potential coverage of the policy."! *Great Am. E & S Ins. Co. v. Power Cell LLC*, 356 F. Supp. 3d 730, 741 (N.D. Ill. 2018) (quoting *Valley Forge Ins. Co. v. Swiderski Elecs., Inc.*, 860 N.E.2d 307, 314–15 (Ill. 2006)) (ellipses in *Power Cell*). To determine whether the

underlying actions are within the scope of the Tax Buyers' coverage, I apply an "eight corners" analysis that "compares the four corners of the underlying complaint with the four corners of the insurance policy to determine whether facts alleged in the underlying complaint fall within or potentially within coverage." *Pekin Ins. Co. v. Precision Dose, Inc.*, 968 N.E.2d 664, 674 (Ill. App. Ct. 2012). It is the factual allegations of the underlying complaints, not the legal theories they assert, that determine whether there is a duty to defend. *Amerisure Mut. Ins. Co. v. Microplastics, Inc.*, 622 F.3d 806, 815 (7th Cir. 2010) (citing *Pekin Ins. Co. v. Dial*, 823 N.E.2d 986, 990 (Ill. App. Ct. 2005)).

II.

The Insuring Agreement in the Policies' Business Liability Coverage[2] states:

> a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury"; "property damage" or "personal and advertising injury to which this insurance applies...
>
> ***
>
> b. This assurance applies:
>
> ***
>
> 2) To "personal and advertising injury" caused by an offense arising out of your business...

[2] Hartford's complaint also refers to the Policies' Umbrella Liability Supplemental Policy, but as Hartford's only argument for why the underlying complaints are outside the scope of that coverage is derivative of its arguments concerning the scope of the Business Liability Coverage, I need not address the Umbrella provisions separately.

Compl., ECF 4 at ¶ 23. "Personal and advertising injury" is defined as "injury...arising out of" one or more offenses including:

> c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person or organization occupies, committed by or on behalf of its owner, landlord or lessor[.]

*Id.* at ¶ 25.

The parties' dispute centers on whether losses arising out of the underlying complaints are within the Policies' coverage for "damages because of...personal or advertising injury." Before reaching this substantive question, however, I address the Tax Buyers' threshold argument that Hartford is estopped from raising any coverage defenses because it waited over eight months to file this action after Wheeler first tendered *Rutka-Kurpiel.* An insurer who declines to defend its insured under a reservation of rights is estopped from asserting coverage defenses unless it files a declaratory action "in a timely manner." *State Auto. Mut. Ins. Co. v. Kingsport Dev., LLC*, 846 N.E.2d 974, 986 (Ill. App. Ct. 2006). There is no bright line rule as to when a declaratory action is timely filed. The *Kingsport* court described three approaches Illinois courts have taken to answer this question:

> One group of cases has required only that the declaratory judgment action be filed before the underlying lawsuit is resolved. ... A second group of cases has looked to whether a trial or settlement was imminent at the time the insurer sought declaratory relief. ... Finally, a

> third group of cases has focused on whether the insurer filed its action within a reasonable time of being notified of the underlying suit.

*Id.* at 986-87 (internal citations omitted). *Kingsport* adopted the "reasonable time" approach, which gives courts the flexibility to "decide each case according to its own facts and circumstances." *Id.* at 987. This approach is "now favored by Illinois courts." *Sterigenics, U.S., LLC v. Nat'l Union Fire Ins. Co. of Pittsburgh*, P.A., 619 F. Supp. 3d 852, 868 (N.D. Ill. 2022), *reversed on other grounds*, 170 F.4th 596 (7th Cir. 2026).

Looking at the facts and circumstances here, including the email communications between Hartford and David R. Grey, I am not persuaded that Hartford is estopped from asserting its coverage defenses. In the eight-and-a-half months between the tender of the first underlying complaint and Hartford's filing of this action, Hartford informed the Tax Buyers of its no-coverage position and asked whether, in light of its position, the Tax Buyers would agree to withdraw the tender to avoid the expense of litigation. The Tax Buyers did not respond immediately, and when they did (through Mr. Grey), they expressed thanks to Hartford for "extending the time for us to continue to look into this coverage issue." ECF 4-6 at 2. These facts distinguish this case from the Tax Buyers' cited case, *Collins Eng'rs, Inc. v. Travelers Prop. Cas. Co. of Am.*, No. 19-CV-01203, 2024 WL 4333117, at *4 (N.D. Ill. Sept. 28, 2024). In *Collins*, the insured responded promptly to the insurer's letter

denying coverage and disputed the insurer's coverage determination. Over the ensuing months, the insured sent additional letters updating the insurer on the underlying proceedings and reiterating its view that the insurer's coverage decision was improper. *Id*. The insured ultimately filed its own action for a declaratory judgment that the insurer owed it a duty to defend; yet the insurer waited another three months before filing a mirror-image declaratory counterclaim. Neither *Collins* nor the Tax Buyers' remaining authorities support estoppel on the record here, especially as there is no sign that the underlying proceedings have advanced past their preliminary stages. Accordingly, I proceed to Hartford's substantive coverage arguments.

The *Moore* complaint (which refers to American Tax Lien as "Defendant") alleges that after the plaintiff failed to pay property taxes, American Tax Lien obtained a tax deed to the plaintiff's residential property, without notice to the plaintiff, then "moved for an order granting possession of the property to Defendant, which the court subsequently granted"; and that "[a]s a direct, proximate, and foreseeable result of Defendant's actions, Plaintiff has lost all rights to his Property, including the right to use, live in and dispose of it." ECF 4-2 at ¶¶ 43, 45. Similarly, the *Rutka-Kurpiel* complaint alleges that after the plaintiff failed to pay property taxes, Wheeler Financial (i.e.,

the "Defendant"), obtained a tax deed to her residential property, then "moved for an order granting possession of the property to Defendant, which the court granted[,]" after which "the Cook County Sheriff's Department affected (sic) a formal eviction at the Property." ECF 4-1 at ¶¶ 43, 45, 47. The plaintiff claims that "[a]s a direct, proximate, and foreseeable result of Defendant's action, Plaintiff has lost all rights to her Property, including the right to use, live in and dispose of it." *Id.* at ¶ 49. Additionally, the underlying plaintiffs allege that they have been injured because the Tax Buyers' conduct "has impeded and continues to impede [their] ability to secure subsequent housing." *Id.* at ¶ 50; ECF 4-2 at ¶ 46. Both underlying complaints allege that as a result of the Tax Buyers' conduct, the named plaintiffs and the classes they seek to represent "have been injured and damaged and are entitled to just compensation and appropriate post-foreclosure and other injunctive relief." ECF 4-1 at ¶¶ 75, 92; ECF 4-2 at ¶¶ 71, 89.

A reasonable read of these allegations is that the underlying plaintiffs seek damages for "wrongful eviction," based on the "plain and ordinary" meaning of that phrase. *See John T. Doyle Tr. v. Country Mut. Ins. Co.*, 8 N.E.3d 490, 496 (Ill. App. Ct. 2014) (defining "eviction" as "actions taken by landlords with the intent to deprive tenants of their right to occupy or enjoy leased premises," citing, *inter alia*, *Pipefitters Welfare Educational*

*Fund v. Westchester Fire Insurance Co.*, 976 F.2d 1037, 1040 (7th Cir. 1992) and Black's Law Dictionary 594 (8th ed. 2004) (defining "eviction" as "[t]he act or process of legally dispossessing a person of land or rental property")). Hartford resists this common-sense interpretation on two grounds. First, it characterizes the relief the underlying plaintiffs seek as uninsurable "restitution" rather than damages; and second, it argues that the underlying claims do not arise out of "wrongful eviction." Neither argument survives scrutiny.

It is true, as Hartford observes, that as a matter of public policy, Illinois law prohibits insurance coverage for losses that are "restitutionary in character." *Astellas US Holding, Inc. v. Fed. Ins. Co.*, 66 F.4th 1055, 1063 (7tt Cir. 2023). As the *Astellas* court explained:

> Illinois cases draw a line between "compensatory" payments, which are insurable, and "restitutionary" payments, which are not. Where a payment compensates a victim or plaintiff for a loss, the payment takes on the character of compensatory damages. ... On the other hand, where a payment restores to a victim or plaintiff what has been taken from it or forces the perpetrator or defendant to disgorge fraudulently obtained profits, the payment is deemed restitutionary.

*Id*. The court acknowledged that "[t]hese can be tricky concepts to discern from case law, especially because sometimes courts use the term damages when they mean restitution." *Id*. at 1064-65 (internal quotation marks and citation omitted). The court then went on to identify various circumstances in which courts applying Illinois

law have deemed payments to fall into one category or the other; to discuss the analytical framework these courts have applied; and to examine the various factors they have considered when it was "not obvious" if a payment was restitutionary or compensatory. *See id.* at 1064-67. Finally, the court observed that a payment can be partially restitutionary and partially compensatory, citing one such case in which the court "gave the benefit of the doubt to the insured, treating the payment as entirely insurable even though a portion of it was likely restitutionary." *Id.* at 1067 (citing *Rosalind Franklin Univ. of Med. & Sci. v. Lexington Ins. Co.*, 8 N.E.3d 20, 39 (Ill. App. Ct. 2014)). *See also Ryerson Inc. v. Fed. Ins. Co.*, 676 F.3d 610, 613–14 (7th Cir. 2012) (a judgment or settlement "could involve a *combination* of restitution and damages, and then the insurance company would be liable for the damages portion in accordance with the allocation formula in the policy") (applying Illinois law) (original emphasis).

Turning to the facts here, Hartford characterizes *Moore* and *Rutka-Kurpiel* as seeking only restitution because they demand the return of something — the "surplus value" of their foreclosed properties - that is rightfully theirs. But the underlying claims are not so simple. On the one hand, Hartford suggests that the *Moore* and *Rutka-Kurpiel* plaintiffs seek restitution of the kind that the *Ryerson* court explained is uninsurable because otherwise, "thieves could buy insurance against having to return money they

stole. No one writes such insurance.”). 676 F.3d at 613. On the other hand, however, Hartford acknowledges – underscores, even – that the underlying plaintiffs do not allege that the Tax Buyers “stole” from them, but rather that the Tax Buyers invoked a putatively lawful process established by Illinois law. Indeed, the plaintiffs’ theory is that the so-called “tax deed process” is itself unconstitutional, and that by invoking it, the Tax Buyers’ caused them to suffer compensable injuries. Viewed in this manner, the relief that *Moore* and *Rutka-Kurpiel* seek can reasonably be construed not as the disgorgement of the Tax Buyers’ ill-gotten gains obtained through intentional misconduct, but rather as damages to compensate them for constitutional injuries they suffered as a result of the Tax Buyers’ good faith recourse to state law procedures. On this view, the Tax Buyers’ losses arising out of these law suits are not clearly uninsurable.

Indeed, the Tax Buyers’ second argument – that the underlying claims are not within the Policies’ coverage because they do not allege “wrongful eviction” – dovetails with this view of the underlying allegations. Hartford argues that because the only “wrongful” conduct that *Moore* and *Rutka-Kurpiel* attribute to the Tax Buyers is the failure to pay them the “surplus value” of their former property, their claims do not assert liability “because of” a “wrongful eviction.” But this reads the Policies’ terms too narrowly.

First, the Seventh Circuit observed in *Cincinnati Ins. Co. v. H.D. Smith*, L.L.C., 829 F.3d 771 (7th Cir. 2016), that under Illinois law, insurance policies that cover suits seeking damages "*because of* bodily injury" promise broader coverage than policies that cover only damages "*for* bodily injury." *Id.* at 774 (original emphasis). The court illustrated the point with the example of an insured individual who causes a car accident in which another individual becomes paralyzed, and "the paralyzed individual sues the insured driver only for the cost of making his house wheelchair accessible, not for his physical injuries." *Id.* The court explained:

> If the insured driver had a policy that only covered damages "for bodily injury" it would be reasonable to conclude that the damages sought in the example do not fall within the insurer's duty. However, if the insurance contract provides for damages "because of bodily injury" then the insurer would have a duty to defend and indemnify in this situation.

*Id.* In the context of this case, the Seventh Circuit's broad reading of the term "because of" suggests that all that is required to trigger the Policies' coverage of suits seeking damages "because of" a "personal and advertising injury" is that there be some causal relationship between the injury and the damages. The *Moore* and *Rutka-Kurpiel* complaints facially articulate this causal link.

Second, Hartford points to nothing in the Policies to support its view that "wrongful eviction" must be interpreted to satisfy the definition of "personal and advertising injury" only if the

insured is alleged to have pursued the eviction through unlawful means. While that is a plausible construction of the Policy terms, "wrongful eviction" can also be interpreted reasonably to include evictions that the insured allegedly pursued through putatively lawful means but that resulted in a constitutional violation. "Where competing reasonable interpretations of a policy exist, a court is not permitted to choose which interpretation it will follow. * * * Rather, in such circumstances, the court must construe the policy in favor of the insured and against the insurer that drafted the policy." *John T. Doyle Tr. v. Country Mut. Ins. Co.*, 8 N.E.3d 490, 498 (Ill. App. Ct. 2014). Because that is the case here, Hartford is not excused from its duty to defend the Tax Buyers on the ground that the underlying complaints do not seek damages because of "wrongful eviction."[3]

This leaves only the Tax Buyers' claim that they are entitled to relief under Section 155 of the Illinois Insurance Code on the basis that Hartford's statement, in its May 20, 2025, letter, that "there is no insurance coverage for this matter..." misrepresented the terms of the Policies. Read in context, that statement is merely a summary of Hartford's coverage determination; it is not

[3] *Pekin Ins. Co. v. Precision Dose, Inc.*, 968 N.E.2d 664, 681 (Ill. App. 2012), is not to the contrary because in that case, there was no nexus at all between the unlawful conduct attributed to the insured in the underlying complaint and the allegations on which the insured relied to trigger coverage.

a misrepresentation of "relevant facts or policy provisions" as required for Section 155 relief.

III.

For the foregoing reasons, the Tax Buyers' motion for judgment on the pleadings is granted to the extent it seeks a declaration that Hartford owes it a duty to defend and that Hartford's failure to defend against *Moore* and *Rutka-Kurpiel* amounts to a breach of contract.[4] The Tax Buyers' motion is denied without prejudice as premature to the extent it seeks a ruling on Hartford's duty to indemnify it for any losses arising out of those cases. Hartford's motion is granted to the extent it seeks judgment in its favor on the Tax Buyers' Section 155 claim and is otherwise denied.

**ENTER ORDER:**

**Elaine E. Bucklo**
United States District Judge

Dated: September 18, 2026

[4] Hartford does not dispute that if I conclude that it owes the Tax Buyers a duty to defend, its failure to defend amounts to a breach of the Policies.